**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**,

| | |
|---|---|
| LEONARD D. WILEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-cv-717-TLW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Leonard D. Wiley, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), requests judicial review of the decision of the Commissioner of the Social Security Administration denying him disability benefits under Titles II and XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. # 8). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**Introduction**

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). The evidence establishing a disability must come from "acceptable medical sources" such as licensed and certified

psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, Leonard D. Wiley, a forty-six-year-old male, applied for disability benefits on March 1, 2007, alleging an onset date of February 24, 2005. (R. 106). Plaintiff alleged that a work-related injury to his neck caused him pain that rendered him unable to work, even after surgery to correct the problem. (R. 106, 186). This continued pain led plaintiff to file for disability benefits.[1] (R. 106). Plaintiff's claim was denied on May 3, 2007, and on reconsideration on August 29, 2007. (R. 53-63, 70-76). Plaintiff requested a hearing before an administrative law judge ("ALJ"), and that hearing was held on January 9, 2009. (R. 23-52). The ALJ issued his decision denying plaintiff benefits on March 4, 2009. (R. 14-22). After the Appeals Council declined to review plaintiff's case, plaintiff filed this appeal. (R. 1; Dkt. # 2).

**Plaintiff's Work History**

Plaintiff left school after the eighth grade but later obtained a GED. (R. 27). At the time of his injury, plaintiff worked in construction, framing houses. (R. 28, 131). Although he was considered a construction foreman, plaintiff testified that he worked alongside his crew in order to make additional money. (R. 29). Plaintiff spent most of his working years as a laborer in a feed mill. (R. 47, 131). His primary duties were loading bags of feed and maintaining and repairing the mills. (R. 47). Plaintiff also worked part-time as a convenience store clerk in the months before his injury. (R. 131).

**Plaintiff's Medical History**

While working a construction job, plaintiff wrenched his neck while carrying a large piece of lumber. (R. 211). That injury resulted in a disc protrusion at C5-6, which placed

---

[1] Plaintiff filed separate applications for benefits under Title II (disability insurance benefits) and Title XVI (supplemental security income). Accordingly, the record reflects the Commissioner's decisions under both claims.

pressure on the nerve root. (R. 194). Plaintiff's worker's compensation doctor, Dr. Arthur Conley, initially recommended a conservative course of treatment that included physical therapy and injections. (R. 185). Plaintiff subsequently attended multiple physical therapy sessions and received three epidural steroid injections. (R. 189-91, 206-08). Plaintiff also took pain medication. (R. 185).

Plaintiff advised Dr. Conley that the injections helped temporarily and that the physical therapy improved his range of motion, but he still complained of constant pain. (R. 181). Dr. Conley then recommended surgery to fuse the C5-6 vertebrae. Id. Dr. Conley reported that plaintiff's MRI showed a "one level disc protrusion that does pinch the nerve on the right side," and he anticipated a "good outcome" from the surgery. Id.

Plaintiff underwent surgery in June 2005. (R. 186). The surgeon fused the C5-6 vertebrae and performed a "spinal cord and nerve root decompression." Id. Although the surgery was successful in fusing the vertebrae, plaintiff continued to complain of pain in his neck, shoulder, and right arm. (R. 166-211). Six weeks after the surgery, plaintiff reported "sharp, burning type pain in the posterior cervical spine down low" with "occasional pain into the right arm" and "some numbness and tingling and burning pain into the right lateral triceps area." (R. 173). Despite the continued pain, plaintiff was "pleased" with the results, because the pain was only occurring "25% to 30% of the time," as opposed to "100% of the time" prior to surgery. Id.

Dr. Conley then ordered plaintiff to continue physical therapy. Id. Plaintiff reported decreased pain after beginning physical therapy, stating that he had pain in his arm "rarely." (R. 172). Plaintiff still reported neck pain, but his range of motion and strength were improving. Id. At that time, Dr. Conley recommended that plaintiff decrease his prescription pain medication and increase the intensity of his therapy, with a goal of having plaintiff return to work. Id.

Thereafter, plaintiff reported episodes of sudden and severe pain in his neck that would debilitate him for days at a time. (R. 171). Dr. Conley advised plaintiff that the fusion was still healing but that plaintiff should continue with physical therapy. Id. Dr. Conley noted that the sudden pains made plaintiff "very hesitant to challenge himself and improve because he is afraid he is going to get these severe sharp pains." Id.

In November 2005, plaintiff complained of persistent pain in his neck and right shoulder blade that radiated down his back. (R. 170). By this time, the fusion was completely healed, and Dr. Conley advised that sometimes the soft tissues take longer to heal. Id. Dr. Conley made the decision to discontinue physical therapy. Id.. Dr. Conley noted that plaintiff was "guarding" his movements. Id.

Plaintiff complained in December that his condition was worse. (R. 169). His neck and shoulder pain were sharper, radiating down into his forearm. Id. Plaintiff also reported pain when he reached overhead or across his body. Id. Dr. Conley was surprised by plaintiff's lack of improvement and ordered additional scans to ensure that the nerve was properly decompressed. Id. Those scans failed to explain plaintiff's pain, so Dr. Conley referred plaintiff to a shoulder specialist to rule out any shoulder injury. (R. 167).

The shoulder specialist found no injury to plaintiff's shoulder and diagnosed plaintiff's pain as "continued discogenic pain causing right shoulder scapular and right arm pain." (R. 211). He noted that plaintiff reported significant improvement from the surgery but continued pain, including a "lightning bolt" pain in his shoulder blade. Id. With the specialist's report in hand, Dr. Conley concluded that plaintiff was suffering "referred cervical axial neck pain." (R. 166). Dr. Conley could provide no additional treatment, so he ordered a functional capacity examination ("FCE") to determine plaintiff's permanent restrictions. Id.

5

Plaintiff's FCE was conducted on April 27, 2006. (R. 224). The evaluation concluded that plaintiff could perform sedentary work. Id. The evaluator noted that plaintiff "continually expressed his fear of symptom exacerbation" and "demonstrated apprehension of any movement which required him to lift his arms above his chest." Id. Plaintiff also reported limiting his daily activities out of fear of increasing his pain. Id.

Once Dr. Conley received the FCE, he released plaintiff from his care in May 2008. (R. 177-78). Thereafter, plaintiff did not seek further medical care until September 2008, when he visited a clinic. (R. 228). Plaintiff complained of neck pain and received prescriptions for Talwin and Trazedone, the two pain medications he had previously taken. Id.. Plaintiff got refills of those medications in December 2008. (R. 234).

Although plaintiff did not seek medical treatment for his pain, plaintiff did undergo a consultative examination with Dr. Ted Honghiran on April 18, 2007, as part of the initial inquiry on his application for disability benefits. (R. 212). Dr. Honghiran found that plaintiff had a "severely limited range of motion of the cervical spine" and "limited range of motion of his shoulders, especially above shoulder height." Id. Dr. Honghiran concluded that the surgery had done little to alleviate plaintiff's symptoms; therefore, his prognosis was "poor. I believe that he will continue to have chronic pain in his neck and arm pain [sic]." Id. The doctor recommended plaintiff seek treatment with a pain management doctor and stated, "At this time I do not think that he will be able to return to work, especially on a construction site." (R. 213).

**The ALJ Hearing**

Prior to the hearing, plaintiff was ordered to undergo a physical residual functional capacity ("RFC") examination. (R. 215). The examining physician concluded that plaintiff had the following limitations: lifting ten pounds occasionally; lifting less than ten pounds frequently;

standing for two hours in a workday; sitting for six hours in a workday; occasional climbing, excluding ladders and scaffolds, stooping, kneeling, crouching, and crawling; and limited overhead reaching. (R. 215-221). The examining physician also found plaintiff's complaints of pain to be credible. (R. 220).

At the hearing on January 9, 2009, the ALJ heard testimony from plaintiff and from a vocational expert. (R. 23-52). Plaintiff testified that after his surgery, he attempted to return to construction work as a light duty foreman but that his supervisor wanted him to climb ladders, so he "gave up" trying to find work. (R. 28). Plaintiff also described a vocational class that he took on website design, but he failed the class due to multiple absences caused by his pain. (R. 27).

Plaintiff testified that he only slept four or five hours a night due to pain. (R. 36-37). During the day, he watches television and naps for an additional three hours. Id. He spends most of the day in a recliner, although he also spends a lot of time lying down on the sofa because it allows him to change positions frequently. (R. 35-37). Plaintiff stated that he did no household chores, because his wife did not want him to do anything. (R. 34).

Plaintiff explained that he had to dress and bathe himself very carefully to avoid increasing the pain in his neck and arm. (R. 35). Plaintiff described "episodes" of severe and sudden pain that left him debilitated for three to six days at a time. (R. 38). He complained of fatigue from being out of shape and testified that he could not walk more than half a city block without stopping to rest. (R. 40-41). Plaintiff also complained of pain and numbness in his left leg that limited his ability to walk, but he stated that Dr. Conley told him that those issues were not related to his neck injury. (R. 42).

Plaintiff also described his limitations. He testified that he could stand for twenty to forty minutes at a time. (R. 41). He could bend as long as he kept his neck still. (R. 44). He could also

pick up twenty pounds from table height, but he could not reach out and lift an object. Id. Plaintiff also stated that he could not do any repetitive lifting. (R. 43). Plaintiff explained that his pain also limited his ability to concentrate and to remember things. (R. 44).

The vocational expert testified that plaintiff's past work as a construction foreman and as a day laborer qualified as heavy work. (R. 48). His past work as a convenience store clerk qualified as light work. Id. The ALJ then posed a hypothetical to the vocational expert that included plaintiff's educational background and the limitations found in the RFC examination. Id. The ALJ and the vocational expert discussed the RFC examination's limitation on reaching and both concluded that the limitation was restricted to overhead lifting. (R. 50). Based on those limitations, the vocational expert testified that plaintiff could not return to his previous work but could perform unskilled sedentary work. (R. 49-50). The vocational expert testified that there were a number of jobs in the regional economy that plaintiff could perform. Id. The ALJ then posed a second hypothetical, which assumed that plaintiff's testimony regarding his limitations was credible. (R. 50). The vocational expert testified that if plaintiff needed to lie down as frequently as his testimony indicated, plaintiff would be unable to do any work. (R. 50-51).

**The ALJ's Decision**

The ALJ found that plaintiff was not disabled. (R. 22). The ALJ found that plaintiff had not engaged in substantial gainful activity since February 24, 2005, the date of his injury. (R. 16). The ALJ found that plaintiff had the following severe impairment: "neck and arm pain, status post cervical fusion of C5-6." Id. Despite this impairment, plaintiff did not meet or medically equal a listing, including the listings for disorders of the spine. (R. 16-17).

Although the ALJ gave some weight to plaintiff's complaints of pain, the ALJ found that plaintiff's complaints of pain were not entirely credible. (R. 17-20). The ALJ found that the

objective medical evidence offered no explanation for plaintiff's continuing and increasing complaints of pain. (R. 17-19). The ALJ also cited to the treating physician's decision to release plaintiff from treatment with a finding of maximum medical improvement for work at the sedentary level. (R. 20). Finally, the ALJ cited to plaintiff's statements in the record regarding his daily activities, which were markedly different from his testimony. (R. 19-20).

The ALJ concluded that plaintiff's residual functional capacity would permit him to do sedentary work with the following restrictions: "no more than occasional climbing, stooping, kneeling, crawling and crouching, as well as the need to avoid climbing ropes, ladders and scaffolds. The claimant's ability to reach and/or lift is limited to no more than occasionally due to pain in the neck and shoulders."[2] (R. 17). Relying on the testimony of the vocational expert, the ALJ concluded that plaintiff was capable of performing a number of sedentary jobs. (R. 21-22). Accordingly, the ALJ held that plaintiff was not disabled.

## **ANALYSIS**

Plaintiff raised the following points of error on appeal: (1) that the ALJ erred in treating the conflicting physician's opinions as consistent; (2) that the ALJ improperly considered plaintiff's complaints of pain; (3) that the ALJ improperly relied upon the vocational expert's testimony because the hypothetical was not consistent with the ALJ's findings on plaintiff's residual functional capacity; (4) that the ALJ made improper credibility determinations; and (5) that the ALJ failed to make findings on plaintiff's non-exertional limitations. The Commissioner argues that the ALJ's findings are proper and should be affirmed.

---

[2] Plaintiff argues that the ALJ's findings here are inconsistent. Plaintiff contends that if he can do only occasional reaching or lifting, then he is unable to do sedentary work. (Dkt. # 18 at 9-10). The Commissioner argues that in the context of the record and the rest of the ALJ's opinion, it is clear that the ALJ intended to find only occasional *overhead* reaching or lifting, and that the omission of the word "overhead" is a scrivener's error. (Dkt.# 19 at 8-10). That argument will be discussed *infra*.

**The Physicians' Opinions**

Dr. Conley adopted the results of plaintiff's FCE and released plaintiff to return to sedentary work with twenty pound limitations on pushing, pulling, and lifting. (R. 224, 227). Dr. Honghiran found that plaintiff walked normally but had limited range of motion in his neck and shoulder, particularly when plaintiff tried to reach overhead. (R. 212). Dr. Honghiran concluded that plaintiff's prognosis was "poor" and that plaintiff would continue to suffer chronic pain. Id. His recommendation read as follows: "At this time I do not think that he will be able to return to work, especially on a construction site. He only has a high school education." (R. 213). Plaintiff argues that these findings are inherently contradictory and that the ALJ erred in finding them consistent with each other. (Dkt. # 18 at 4-5). The Commissioner argues that the two opinions are not inconsistent with each other and that plaintiff reads Dr. Honghiran's prohibition on plaintiff's return to work too broadly. (Dkt. # 19 at 4-5).

Dr. Honghiran's statement that plaintiff cannot return to work is clearly in conflict with Dr. Conley's opinion that plaintiff can perform a full range of sedentary work, and yet the ALJ adopted both opinions, finding them consistent with each other. Because the ALJ adopted conflicting medical opinions, one that finds plaintiff unable to work and one that finds plaintiff able to perform sedentary work, the Court must remand the case for the ALJ to clarify which medical opinion he is adopting. See Rutledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000) (holding that the ALJ has the responsibility to weigh and resolve evidentiary conflicts and inconsistencies). See also Alston v. Astrue, 2011 WL 3652176, *7,9 (D.Kan. August 19, 2011) (remanding the case to the ALJ for further proceedings where the ALJ made multiple errors in analyzing medical opinion evidence).

**The ALJ's Evaluation of Plaintiff's Pain/Credibility Determination**

Next, plaintiff argues that the ALJ failed to consider plaintiff's pain under the applicable regulations. Specifically, he argues that the ALJ used improper terminology and relied on boilerplate language to reach his conclusion that plaintiff's claims of pain were inconsistent with his impairments. This argument essentially challenges the ALJ's credibility findings, which plaintiff also raised in his fourth point of error. The Court considers these two arguments as a single issue: whether the ALJ properly found that plaintiff's claims of pain were not completely credible.

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Plaintiff's "boilerplate language" argument fails because boilerplate language is insufficient to support a credibility determination only "in the absence of a more thorough analysis." Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). In this case, the ALJ cited a

number of facts to support his finding that plaintiff's claim of "totally disabling pain" was not credible.[3] The ALJ referred to the objective medical evidence in great detail, noting that Dr. Conley, plaintiff's treating physician found no additional problems in plaintiff's neck following his recovery from surgery. (R. 18). The ALJ also referenced the findings of two consulting physicians. The shoulder specialist who saw plaintiff in March 2006 found no physical cause for plaintiff's pain. Id. Even Dr. Honghiran found no physical cause for plaintiff's pain. (R. 19).

The ALJ found that plaintiff's suffered the severe impairment of "neck and arm pain, status post cervical fusion C5-6." (R. 16). Because "[a] claimant's subjective allegation of pain is not sufficient in itself to establish disability," plaintiff "must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (citing Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987)). Luna further provides that there must be a "'loose nexus'" between the proven impairment and plaintiff's "subjective allegations of pain." Luna, 834 F.2d at 163. The ALJ must then consider both the objective and subjective evidence to determine whether plaintiff's claim is disabling. See id.

Here, the medical evidence does not identify a pain-producing impairment. Plaintiff did suffer from a pain-producing impairment following his injury in February 2005. That impairment, a cervical disc displacement at C5-6 with nerve root compression, was repaired with surgery in June 2005. Thereafter, Dr. Conley treated plaintiff until he reached maximum medical improvement in May 2006. At the time Dr. Conley discharged plaintiff, there was no impairment

---

[3] Plaintiff also takes issue with the ALJ's use of the term "totally disabling pain," arguing that it is not a "standard or criterion" used in the disability determination. (Dkt. # 18 at 7). Plaintiff's argument on this point is without merit. The plaintiff's only complaint in his application was pain; therefore, the ALJ's use of the phrase "totally disabling pain" was simply a re-iteration of plaintiff's own allegations and the ALJ's finding that "neck and arm pain, status post cervical fusion C5-6" was plaintiff's sole impairment.

or condition to explain his subjective complaints of pain. Neither the shoulder specialist nor Dr. Honghiran found any impairment or condition that would explain plaintiff's complaints of pain. Accordingly, substantial evidence supports the ALJ's credibility findings that plaintiff's subjective complaints of pain are not entirely credible, and the Court will not disturb those findings.

**The ALJ's Hypothetical**

Plaintiff also argues that the hypothetical that the ALJ posed to the vocational expert during the hearing failed to include all of the limitations in the ALJ's findings with respect to plaintiff's residual functional capacity. (Dkt. # 18 at 9-11). Plaintiff argues that the ALJ found that plaintiff residual functional capacity was limited to occasional reaching due to pain but that the hypothetical limited only overhead reaching. (Dkt. # 18 at 10). The Commissioner argues that the omission of the word "overhead" was simply a scrivener's error. (Dkt. # 19 at 8-9).

The ALJ's decision sets forth all of the objective medical evidence, including those opinions of the treating physicians, consulting physicians, and the disability medical consultants. Dr. Conley released plaintiff with no restrictions on overhead lifting, a finding consistent with plaintiff's FCE. (R. 177, 224). Dr. Honghiran did set restrictions on overhead lifting, noting plaintiff's pain if he reached for anything above shoulder height. (R. 213). Plaintiff's residual functional capacity report also limited overhead reaching. (R. 215). The ALJ then concluded that his findings regarding plaintiff's residual functional capacity were consistent with the objective medical evidence. (R. 21). The restriction on "overhead reaching" rather than "reaching" is consistent with the ALJ's decision.[4] Accordingly, the Court agrees that the omission of the word

---

[4] The Court also notes that the ALJ and the vocational expert specifically discussed plaintiff's limitations on reach and concluded that the residual functional capacity exam was specifying "overhead reaching" only. (R. 50).

13

"overhead" was a scrivener's error. See, e.g., Poppa v. Astrue, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (refusing to remand a case based upon a scrivener's error where the outcome of the case was not affected).

**Non-Exertional Limitations**

Finally, plaintiff argues that the ALJ erred in failing to consider plaintiff's non-exertional limitations, including fatigue, difficulty concentrating, and memory lapses. (Dkt. # 18 at 11-12). The only evidence of non-exertional limitations is found in plaintiff's testimony. (R. 40, 44-45). Plaintiff testified that he tired easily because he was "out of shape" and because his left leg would go numb when he walked. (R. 40, 42). Plaintiff also stated that he often failed to pay attention while watching television and that he would occasionally get up for something and forget why he was up. (R. 44-45). Nothing in this testimony links plaintiff's claims of non-exertional limitations to his pain.

An ALJ's hypothetical question to a vocational expert at step five of the analysis must accurately and precisely reflect all of the "impairments and limitations that are borne out by the evidentiary record." Decker v. Chater, 86 F.3d 953 (10th Cir. 1996). See also Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (citation omitted). In this case, the ALJ found that plaintiff's subjective complaints were not entirely credible, and the Court has affirmed those findings. Plaintiff has submitted no evidence, other than his own testimony, to suggest that he has non-exertional limitations. In fact, plaintiff admitted that the numbness in his leg was not due to his neck injury. (R. 42). Accordingly, the ALJ did not err in failing to include non-exertional limitations in the hypothetical to the vocational expert, because no such limitations exist in the record.

## **CONCLUSION**

For the above stated reasons, this Court REVERSES and REMANDS the Commissioner's decision denying Disability Insurance Benefits for resolution of the conflict in the ALJ's findings. On remand, the ALJ shall clarify which medical opinion he is adopting and conduct any necessary analysis for his reason for adopting that opinion.

SO ORDERED this 29th day of March, 2012.

_____
T. Lane Wilson
United States Magistrate Judge